William D. Artus
629 L Street, Suite 104
Anchorage, Alaska 99501
Telephone: (907) 277-9918
Email: artuslaw@ak.net

Attorney for Trustee

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re<br><br>ALASKA DISPATCH NEWS, LLC,<br><br>Debtor. | No. 17-00285-GS<br><br>Chapter 7 |

**TRUSTEE'S REPLY
IN SUPPORT OF APPLICATION TO EMPLOY SPECIAL COUNSEL**

While characterized as an objection to the employment of special counsel, the Debtor actually appears to object to the Trustee's pursuit of any avoidance claims relating to principal Alice Rogoff. In so doing, the Debtor essentially argues that zero recovery to the non-Rogoff unsecured creditors would be better than a potentially limited recovery. The Debtor's objection is diametrically at odds with the Trustee's duty to maximize recovery to the creditor body as a whole.

The Trustee's employment of special counsel to investigate and, if appropriate, pursue avoidance actions is amply supported by the record. The Debtor has no standing to evaluate or pursue claims and its objection, seeking solely to insulate the Debtor's principal from any avoidance actions, should be overruled.

### I. RELEVANT FACTUAL BACKGROUND

A.  The Proposed Engagement

The Trustee was appointed on September 25, 2017. Docket No. 113. On October 20, 2017, the Trustee filed an Application for an Order Authorizing the Trustee to Employ Bush Kornfeld LLP as

Special Counsel to represent the Trustee in analyzing and potentially pursuing avoidance actions. Docket No. 136. The bankruptcy estate (the "Estate") currently has no assets. The Trustee seeks to employ Bush Kornfeld LLP ("Proposed Special Counsel") pursuant to the terms of a contingent fee agreement. Docket No. 136, Ex. A. The Estate will not be responsible for payment of Proposed Special Counsel's fees unless it obtains a recovery for the Estate in any actions it pursues.

**B.     Facts Indicating Potential Recovery to the Estate**

The Trustee has not yet made a final determination as to which avoidance actions, if any, she will pursue. However, the record before the Court indicates that employment of special counsel to investigate avoidance actions is appropriate.

The following facts disclosed by the Debtor in its Schedules and Statement of Financial Affairs ("SOFA") and the Declaration of Alice Rogoff (Docket No. 12), as well as publically available documents, suggest that the Estate may hold significant claims against Ms. Rogoff and/or Northrim Bank:

1.     Ms. Rogoff, through her wholly owned indirect subsidiary, AK Publishing, LLC, acquired the stock of Alaska Dispatch News, LLC, formerly known as Alaska Daily News, LLC (the "Debtor"), in March 2014. Artus Decl., Ex. A (the "Rogoff Declaration") at ¶ 6. While the exact date is unclear, it appears that Ms. Rogoff caused the Debtor to liquidate $14,500,000 of the Debtor's own real estate to fund her purchase of 100% of the stock in the Debtor. Rogoff Decl. at ¶¶ 6 and 9(b). In other words, the value of the real estate was removed from the Debtor and used for the benefit of Ms. Rogoff without any apparent corresponding benefit to the Debtor.

2.     In order to acquire the stock of the Debtor through her wholly-owned subsidiaries, Ms. Rogoff personally borrowed $13,000,000 from Northrim Bank (the "Rogoff Northrim Bank Loan"). Rogoff Decl. at ¶ 6. Ms. Rogoff caused the Debtor to guarantee her personal obligation to Northrim Bank without any apparent corresponding benefit to the Debtor.[1] Artus Decl., Ex. B.

---

[1] While Ms. Rogoff asserts that she has provided funding to the Debtor, these were characterized as loans that the Debtor would obligated to repay, not capital contributions. See Bankruptcy Schedule F

3.	While not reflected on the Debtor's SOFA, within the six months prior to the August 12, 2017 bankruptcy filing (the "Petition Date") and while under the control of Ms. Rogoff, the Debtor pledged its personal property to secure the Rogoff Northrim Bank Loan. Artus Decl., Ex. C. The Schedules do not reflect any equivalent value provided by Northrim Bank to the Debtor in exchange for this pledge.

4.	The Debtor's SOFA reflects that in the year prior to the Petition Date alone, while under the control of Ms. Rogoff, the Debtor caused payments totaling over $400,000 to be made to Northrim Bank on account of the Rogoff Northrim Bank Loan. Artus Decl., Ex. D.

5.	The Debtor's SOFA discloses that the payments to Northrim Bank were made from one or more of the Debtor's operating accounts. While the accounts were in the name of the Debtor's parent, AK Publishing, LLC,[2] the Debtor's Schedule B3 and the Rogoff Declaration make clear that, regardless of the name on the accounts, the accounts were the Debtor's. Artus Decl., Ex. E (Schedule B3); Rogoff Decl. at ¶ 14. Ms. Rogoff testified at the Debtor's recent 341 meeting that AK Publishing, LLC has no revenue of its own. Artus Decl. Any suggestion that the accounts do not constitute property of the Estate ignores the substance of Ms. Rogoff's own sworn statements.

## II. ARGUMENT

The Trustee is required to represent the interests of <u>all</u> of the Estate's creditors and is charged with maximizing the recovery of estate property for creditors as a whole. See 11 U.S.C. §704; <u>Hirschfeld v. McKinley</u>, 78 F.2d 124, 135 (9th Cir. 1935) (explaining that a chapter 7 trustee represents the interests of all unsecured creditors, not a particular individual creditor or creditor group); <u>In re KVN Corp.</u>, 514 B.R. 1, 5 (9th Cir. BAP. 2014) (a trustees "primary job is to marshal and sell the assets, so that those assets can be distributed to the estate's creditors." (citing <u>In re Joseph</u>, 208 B.R. 55, 60 (9th Cir. BAP 1997)). Chapter 5 of the Bankruptcy Code authorizes the trustee to pursue various avoidance actions, including

---

at 3.139. Docket No. 143.

[2] AK Publishing, LLC was an entity formed by Ms. Rogoff to acquire the stock of the Debtor. Artus Decl., Ex. A at ¶ 6.

preferences and fraudulent conveyances. See 11 U.S.C. §§ 547, 548, 550.

As of November 2, 2017, Debtor scheduled unsecured non-priority claims totaled $18,954,159. This includes a $16,619,096 claim in favor of Ms. Rogoff (the "Asserted Rogoff Claim"), representing amounts she allegedly loaned to the Debtor from 2015 to the Petition Date. The Debtor argues that, because Ms. Rogoff represents the majority of the unsecured pool, any avoidance recovery obtained from Ms. Rogoff would simply result in a re-distribution of a large percentage of the net recovered funds to her. Because Ms. Rogoff would personally realize a net loss, the Debtor concludes that this justifies not pursuing any avoidance claims against Ms. Rogoff, regardless of legal merit.

The Debtor's logic fails for multiple reasons. It is not the Debtor's right or responsibility to decide the minimum recovery that would be meaningful to non-insider creditors. It is not the Debtor's responsibility to argue in favor of one insider creditor's interests to the detriment of the remaining unsecured creditors. Every unsecured creditor is entitled to be paid its pro rata share of whatever the Trustee can recover, whether the creditor holds 1% or 99% of the total amount of allowed claims. Moreover, under the Debtor's reasoning, any creditor asserting a large percentage of the total unsecured claims would be insulated from avoidance actions, a result not contemplated by the Bankruptcy Code. The Debtor has not cited any authority for its argument opposing the employment of special counsel and it is highly unlikely that any supporting authority could be found.

Additionally, Ms. Rogoff's appears to have redirected at least $14,500,000 of the Debtor's real estate asset proceeds for her own use, only to then provide funds back to the severely undercapitalized Debtor and assert a claim in favor of herself. And Ms. Rogoff caused the Debtor to incur substantial unsecured indebtedness while it was operating a business that did not earn enough revenue to pay its debts. Under the circumstances, the Court may ultimately determine that Ms. Rogoff's claims should be subordinated and are not entitled to be paid on par with unsecured trade creditors. Until the Trustee has fully investigated the Debtor's financial affairs, the ultimate allowance or priority of any particular claim cannot be determined. Proposed special counsel will conduct the necessary investigation on a contingent

fee basis without any risk to the estate and creditors if it is not successful in recovering money for the estate.

Given that the Estate is currently without assets to fund investigation and pursuit of avoidance claims, the Trustee has proposed to employee special counsel on a contingent fee basis. The Estate is not at risk of incurring attorneys fees unless proposed special counsel is successful in obtaining a recovery for creditors. The fee structure alleviates any concern that the Estate would be spending assets that would otherwise flow to unsecured creditors.

### III. CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that the Court approve the employment of Proposed Special Counsel pursuant to the terms of the Application so that the Trustee can fulfill her duties to the Estate.

Dated at Anchorage, Alaska on November 15, 2017.

/s/ William D. Artus
William D. Artus
Attorney for Trustee

I certify that on November 15, 2017 a true and
correct copy of this Reply was served on

U.S. Trustee
Nacole Jipping, Trustee
Cabot Christianson, attorney for debtor

and the other persons who receive service of
pleadings by electronic means through the ECF system
as indicated on the Notice of Electronic Filing.

/s/ William D. Artus
William D. Artus